**NOT FOR PUBLICATION** (Docket No. 6)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | : | |
|---|---|---|
| FRANCISCO DIDIANO, | : | |
| | : | |
| Plaintiff, | : | Civil No. 10-4483 (RBK/AMD) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| KAREN BALICKI, SOUTH WOODS STATE PRISON, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter arises out of the alleged assault of a state prisoner by a fellow inmate. Presently before the Court is the motion to dismiss, or in the alternative, the motion for summary judgment filed by Defendants Karen Balicki and South Woods State Prison ("SWSP"). (Doc. No. 6). During his incarceration at SWSP, Plaintiff was severely injured when his cellmate poured boiling water onto his face. As a result of that incident, Plaintiff asserted claims against the prison superintendent and the prison for violation of the New Jersey Civil Rights Act ("NJCRA"), and deprivations of his Eighth Amendment rights under the U.S. Constitution. Plaintiff claims that Defendants breached their duty to ensure that he was safe from unprovoked attacks by allowing an inmate with known psychological problems to remain in the general prison population. Defendants argue that the Court should dismiss Plaintiff's claims because: (1) both Balicki and SWSP are entitled to sovereign immunity under the Eleventh Amendment of the United States Constitution, and (2) Plaintiff failed to properly exhaust all available

1

administrative remedies as required by the Prisoner's Litigation Reform Act of 1995, 42 U.S.C. § 1997e.  For the reasons expressed below, Defendants' motion is **GRANTED**.

I.   BACKGROUND

Plaintiff is an inmate in the New Jersey Department of Corrections (the "Department") currently incarcerated at SWSP.  Karen Balicki served as the Administrator of SWSP during the events giving rise to this dispute.

On December 19, 2008, Plaintiff's cellmate, Duan Howard, boiled water in a modified, prison-issued pot and poured the water onto Plaintiff while he was sleeping.  As a result, Plaintiff sustained permanent injuries.  At the time of the assault, prison officials classified Howard as a prisoner with special mental health needs.  Plaintiff does not allege that Balicki was personally aware of Howard's mental condition.  Immediately after the incident, Plaintiff was transferred to the South Jersey Regional Medical Center, where he received treatment for his injuries.  After he was discharged from the hospital, Plaintiff was transferred to Northern State Prison ("NSP").  On January 29, 2009, Plaintiff was transferred back to SWSP.

A.  The New Jersey Department of Corrections Grievance System

Plaintiff was incarcerated at NSP from December 19, 2008 through January 29, 2009.  The Department requires all correctional institutions to provide inmates with a departmentally-approved procedure for resolving complaints.  N.J. Admin. Code § 10:8-1.1 to -3.6.  Pursuant to the New Jersey Administrative Code § 10A:8-1.1 to -3.6, NSP developed and issued an Inmate Handbook, which established an inmate administrative grievance procedure.  (Pedalino Decl. ¶ 3).  The administrative grievance procedure provided inmates with a mechanism they could use to bring complaints, problems, and suggestions to the attention of correctional facility staff for resolution.  (Id. ¶ 4).  The inmate population at NSP learned the procedures for filing an

2

administrative grievance through the Inmate Handbook.  (Id. ¶ 5).

Prior to seeking judicial relief, inmates are required to use the Inmate Remedy System. To commence a grievance using the Inmate Remedy System, an inmate must complete the Inmate Remedy System Form and deposit the form into a collection box.  (Id. ¶ 7; Defs. Br. Ex. A).  Inmates in the Protective Custody Unit are required to give their completed forms to their social worker, area custody supervisor, or mental health worker for processing.  (Pedalino Decl. ¶ 8; Defs. Br. Ex. A).  Pursuant to state regulations, SWSP is required to provide illiterate inmates with assistance for each step of the Inmate Remedy System.  N.J. Admin. Code § 10A:1-4.4(j).

After the forms are consolidated, the Inmate Remedy System Coordinator distributes them to the appropriate department supervisor for investigation.  (Pedalino Decl. ¶ 12; Defs. Br. Ex. A).  The department head investigates the report and issues a response.  (Pedalino Decl. ¶ 9; Defs.' Br. Ex. A).  An inmate may appeal the response by completing the appeal section of the Inmate Remedy System Form no more than ten days after he receives the response.  (Pedalino Decl. ¶ 11; Defs. Br. Ex. C at 56).  The Administrator renders appeals decisions.  (Pedalino Decl. ¶ 15; Defs. Br. Exs. B, C).  An inmate who receives a response to his administrative appeal has exhausted his administrative remedies.  (Pedalino Decl. ¶ 16; Defs. Br. Exs. B, C).

### B. Plaintiff's Grievance

Plaintiff submitted three Inmate Remedy System Forms on April 16, 2009.  Because Plaintiff has difficulty writing and speaking English, a "prison paralegal" assisted him with completing the Inmate Remedy System Forms.  There is no evidence that the "prison paralegal" is an employee of the Department, or an employee of the State of New Jersey.  In the Inmate Remedy System Forms, Plaintiff complained:  (1) that he was severely injured by a fellow

inmate; (2) that the prison officials were negligent in administering medical care and treatment; (3) that prison officials failed to "properly inspect and adhere to safety standards"; and (4) that prison officials should not have allowed Howard into the general population because of his status as a special needs inmate. (Pl.'s Br. Ex. A). After he submitted the Inmate Remedy System Forms, Plaintiff received a Corrective Action Form from the Department. The Corrective Action Form identified deficiencies in Plaintiff's Inmate Remedy System Form, and provided Plaintiff with specific instructions for correcting those deficiencies. The Corrective Action Form instructed Plaintiff to: (1) submit a Health Services Request Form; (2) resubmit the Inmate Remedy Form with more specific information; and (3) speak with the housing unit sergeant. (Pl.'s Br. Ex. B Corrective Action Form).

There is no evidence that Plaintiff complied with those instructions. Moreover, there is no evidence that Plaintiff asked a prison official to help him interpret the Corrective Action Form within ten days after he received the form. Instead, Plaintiff claims that the prison paralegal told him that the Corrective Action Form stated that prison officials wanted to meet with him, and counseled him to wait until the officials scheduled the meeting before taking action. (Didiano Decl. ¶ 11). No prison official contacted Plaintiff to schedule a meeting.

In early May or June 2009, Plaintiff met with a "prison health professional/psychologist" in the medical wing of SWSP. During Plaintiff's conversation with that official, Plaintiff informed the official that he submitted the Inmate Remedy System Forms and received a Corrective Action Form. Plaintiff then asked the prison psychologist to contact other prison officials to determine when they planned to schedule the meeting. That psychologist did not contact any other prison official to determine the time, date, and location of Plaintiff's meeting, or otherwise assist Plaintiff with pursuing his administrative claim.

4

    **C. The Pending Action**

On July 30, 2010, Plaintiff filed the Complaint in state court against Defendants Karen Balicki and SWSP alleging that Defendants failed to protect him from an assault by a fellow inmate.  On September 1, 2010, Defendants removed the matter to this Court.  On October 28, 2010, Defendants filed a motion to dismiss, or, in the alternative, a motion for summary judgment.  The parties submitted their respective briefs and the motion is ripe for review.

**II.   STANDARD[1]**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  <u>Id.</u> at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex</u>, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the nonmoving

---

[1] Because the Court relies upon documents outside of the pleadings, and Defendants move in the alternative for summary judgment, the Court will treat Defendants' motion as a motion for summary judgment.

5

party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the district court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

#### A. Sovereign Immunity

Defendants SWSP and Balicki claim that they are entitled to sovereign immunity under the Eleventh Amendment of the U.S. Constitution.

Each state is a "sovereign entity in [the] federal system." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996). Because of their sovereignty, states are immune from suit. Alden v. Maine, 527 U.S. 706, 713 (1999). In addition, state officials are immune from suit for damages arising from claims relating to their official duties. Kentucky v. Graham, 473 U.S. 159, 169-71 (1985). Those principles are embodied in, but not limited by, the Eleventh Amendment

of the United States Constitution.  Id. at 712-13.  State sovereign immunity is "a jurisdictional bar which deprives federal courts of subject matter jurisdiction[,]" Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996), and "an affirmative defense[,]" Carter v. City of Phila., 181 F.3d 339, 343 (3d Cir. 1999).  Therefore, the Court must grant the State's motion for summary judgment if the State enjoys immunity from Plaintiff's § 1983 claim and Plaintiff's NJCRA claim.

There are two exceptions to state sovereign immunity.  First, an individual can sue a state if Congress has "unequivocally expressed its intent to abrogate the [state's] immunity," and Congress did so "pursuant to a valid exercise of [its Fourteenth Amendment] power."  Seminole Tribe, 517 U.S. at 55 (quoting Green v. Mansour, 474 U.S. 64, 68 (1985)) (internal quotations omitted).  Second, an individual can sue a state if the state has waived its sovereign immunity. Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999).  A state waives its sovereign immunity by unequivocally consenting to suit.  Id. at 682.  That "stringent" test is satisfied if the state "voluntarily invokes [federal] jurisdiction" or clearly declares its intent "to submit itself to [federal] jurisdiction."  Id. at 675-76.  It is not satisfied if the state merely consents to suit "in the courts of its own creation" or "'in any court of competent jurisdiction[.]'"  Id. at 676 (quoting Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573, 577-79 (1946)).

Finally, the Third Circuit has held that "[w]hen a State, facing suit in its own courts, purposefully requests a federal forum, it expresses a clear intent to waive immunity from suit." Lombardo v. Pa. Dep't of Pub. Welfare, 540 F.3d 190, 197 (3d Cir. 2008).  Thus, when a state requests removal of a federal or state claim pursuant to 28 U.S.C. § 1441(b), the state voluntarily

7

"waive[s] [its] otherwise valid objection to litigation of a matter . . . in a federal forum." Lapides v. Bd. of Regents of Univ. Sys. of Georgia, 535 U.S. 613, 624 (2002).

Here, Defendants expressly waived their right to sovereign immunity. On September 1, 2010, Defendants filed the notice of removal. In the notice of removal, Defendants argued that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1367. Because removal constitutes an express waiver of sovereign immunity as a matter of law, the Court finds that Defendants cannot invoke sovereign immunity at this stage in the litigation.

### B. Exhaustion

Defendants argue that they are entitled to summary judgment on Plaintiff's § 1983 claims because Plaintiff failed to exhaust all available administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), codified as 42 U.S.C. § 1997e, prisoners are precluded from bringing claims in federal court without exhausting "all avenues of relief available to them within their prison's inmate grievance system." Spruill v. Gillis, 372 F.3d 218, 227 (3d Cir. 2004) (holding that failure to "properly" exhaust administrative remedies under PLRA constitutes procedural default).

The purpose of the exhaustion requirement is: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." Spruill, 372 F.3d at 230.

"PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate," including claims related to specific incidents and claims of ongoing conditions. Porter v. Nussle, 534 U.S. 516, 520, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all

8

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Moreover, all available administrative remedies must be pursued, even if they are not "plain, speedy, and effective," do "not meet federal standards," or could not result in the relief requested in the suit. Nussle, 534 U.S. at 524. Available remedies include grievance procedures set forth in an inmate handbook, even if not formally adopted by any state administrative agency. Concepcion v. Morton, 306 F.3d 1347, 1348, 1349 (3d Cir. 2002). Failure to exhaust such remedies mandates dismissal of a prisoner's claim. Booth v. Churner, 532 U.S. 731, 739 (2001); Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000).

Moreover, illiterate prisoners who fail to seek assistance from prison officials and prisoners who receive inaccurate guidance from their attorneys are not excused from the exhaustion requirement. In Ramos v. Smith, 187 F. App'x 152 (3d Cir. 2006), the plaintiff was an illiterate inmate in a federal detention center in Philadelphia, Pennsylvania. Id. at 153. Pursuant to applicable federal regulations, the detention center was required to assist illiterate inmates with the administrative grievance procedure. Id. at 154. After the plaintiff was transferred from the general population to the Special Housing Unit, the plaintiff filed six separate prison grievances alleging a variety of unlawful practices concerning the conditions of his confinement. Id. The prison denied all of the plaintiff's grievances. Id. The plaintiff failed to appeal those denials, and instead filed a pro se complaint against the warden, alleging that his detention violated his due process rights under the Fifth Amendment of the U.S. Constitution. Id. The defendant moved to dismiss, arguing that the plaintiff failed to exhaust all available administrative remedies. Id. The plaintiff responded by arguing that: (1) he relied on the inaccurate representations of counsel; and (2) because he was illiterate, the court should excuse

9

him for failing to appeal the denial of his administrative grievances. The district court dismissed the complaint, and the Third Circuit affirmed. With respect to the plaintiff's argument that he was illiterate, the Third Circuit found significant that the record lacked evidence that "he asked for and was refused assistance in filing his administrative appeals." Id. at 154. The Court also rejected the plaintiff's argument that he should be excused due to the inaccurate advice from his attorney, holding that "obtaining attorney assistance is not a valid reason for exceeding the time limit to file an appeal unless the delay was caused by prison staff." Id. Moreover, the Court refused to excuse the plaintiff's procedural default because the plaintiff did not seek an extension of time to file an appeal after he learned that no one filed an appeal on his behalf. Id.

This case is virtually identical to Ramos. Similar to the plaintiff in Ramos, who failed to properly exhaust all administrative remedies offered by the correctional institution, here, Plaintiff failed to exhaust the administrative process offered by SWSP. In Ramos, the court refused to excuse the exhaustion requirement notwithstanding the fact that the plaintiff relied upon incorrect advice from an attorney. Likewise, here, Plaintiff failed to complete the appeals process for the Inmate Remedy System after relying on the incorrect advice of a "prison paralegal." Moreover, like the plaintiff in Ramos, who failed to seek the assistance of a prison official even though the correctional institution was required to provide illiterate inmates with assistance with the grievance procedure, here, although SWSP is required to assist illiterate inmates with each step of the Inmate Remedy System, Plaintiff failed to seek assistance from SWSP staff.[2] (Defs.' Reply Br., at 16-17).

---

[2] The facts demonstrate that Plaintiff sought the consultation of a psychologist in the prison to assist him with scheduling a meeting with other prison officials. However, there is no evidence that Plaintiff told the psychologist that he was illiterate, or that the psychologist knew that he was illiterate. Moreover, Plaintiff does not allege that he asked the psychologist to assist him with completing the Inmate Remedy Form, or to help him interpret the instructions contained in the Corrective Action Form. Instead, Plaintiff alleges that he simply asked the psychologist "to follow up on [the Inmate Remedy Form and Corrective Action Form] to see if a meeting would be scheduled." (Didiano Decl. ¶ 12).

10

Therefore, because Plaintiff failed to comply with the exhaustion requirement under the PLRA, and because there is no basis for excusing Plaintiff's failure, the Court finds that all Defendants are entitled to summary judgment on Plaintiff's § 1983 claims.

### C. Plaintiff's NJCRA Claim Against SWSP

Plaintiff also asserts claims against Defendants under the NJCRA. When interpreting the NJCRA, the Court's objective is to ascertain the intent of the legislature. DiProspero v. Penn, 874 A.2d 1039, 1048 (N.J. 2005). The Court should "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." Id. Moreover, in construing the NJCRA, the Court should "attempt to capture the essence of the law – its logic, sense, and spirit – to achieve a result contemplated by the Legislature." State v. Crawley, 901 A.2d 924, 931 (N.J. 2006).

"Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart:  Section 1983 . . . ." Stroby v. Egg Harbor, Twp., No. 09-698, 2010 WL 5036982, at *5 n.5 (D.N.J. Dec. 10, 2010) (quoting Chapman v. State of New Jersey, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009)). Moreover, the NJCRA was designed to "incorporate and integrate seamlessly" with all existing civil rights jurisprudence. Id.

The NJCRA creates a private right of action for claims based on "any substantive rights, privileges or immunities secured by the [U.S.] Constitution or the laws of [New Jersey]." N.J. Stat. Ann. 10:6-2(c). However, in order for a defendant to be liable for a violation of the NJCRA, the defendant must be a "person" as defined by the statute. The NJCRA provides in relevant part:

> Any person who has been deprived of any substantive due process
> or equal protection rights, privileges or immunities secured by the
> Constitution or laws of the United States, or any substantive rights,
> privileges or immunities secured by the Constitution or laws of this

11

> State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a <u>person</u> acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. 10:6-2(c) (emphasis added). Similarly, 42 U.S.C. § 1983 creates a private right of action for claims based on "the deprivation of . . . rights, privileges, or immunities secured by the Constitution and laws [of the United States of America] . . . ." 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every <u>person</u> who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added). Thus, under both the NJCRA and Section 1983, the defendant must be a "person" in order to be liable for an alleged civil rights violation.

In <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989), the U.S. Supreme Court held that a state and a state official acting in his or her official capacity are not "person[s]" within the meaning of Section 1983. <u>Id.</u> at 64, 71. In <u>Will</u>, the plaintiff filed a lawsuit in state court against the Michigan Department of State Police and its director, alleging a variety of state and federal constitutional violations. <u>Id.</u> at 60. The trial court concluded that the plaintiff established a violation of the U.S. Constitution and found that the defendants were persons within the meaning of Section 1983. <u>Id.</u> at 61. The Michigan Court of Appeals vacated the judgment, holding that a State is not a person under § 1983. <u>Id.</u> The U.S. Supreme Court affirmed in part and reversed in part, holding that both a State and a state official acting in his official capacity are not persons within the meaning of Section 1983. <u>Id.</u> at 65-66.

First, citing Wilson v. Omaha Indian Tribe, 442 U.S. 653, 667 (1979), the U.S. Supreme Court reasoned that the common usage of the term "person" ordinarily does not include a State. Will, 491 U.S. at 64.  Second, the Court found that "[t]he language of § 1983 . . . falls short of satisfying the ordinary rule of statutory construction that if Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.'"  Id. at 65 (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242 (1985)).  The Court emphasized the fact that Congress enacted § 1983 after the Civil War "in response to the widespread deprivations of civil rights in the Southern States and the inability or unwillingness of authorities in those states to protect those rights or punish wrongdoers," id. at 66 (quoting Felder v. Casey, 487 U.S. 131, 147 (1988)), and provided a federal forum for claimants to litigate their civil rights under the U.S. Constitution.  Id.  However, the Court noted that although Section 1983 provides a federal forum for plaintiffs litigating their rights under the U.S. Constitution, it does not "provide a federal forum for litigants who seek a remedy against a State . . . ."  Id. (emphasis added).  To that end, the Court noted that "[t]he Eleventh Amendment bars such suits unless the State has waived its immunity . . . or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity."  Id.

Plaintiff argues that Will does not bar his NJCRA claim because "Will's holding derives in large part from the state's Eleventh Amendment immunity," and a suit under the NJCRA does not implicate any Eleventh Amendment concerns.  (Pl.'s Br., at 5-6).  Defendants argue that because the State of New Jersey is not a "person" within the meaning of Section 1983, and the NJCRA substantially adopts all federal civil rights jurisprudence, Plaintiff's claim against SWSP is barred.

13

The Court finds that because Defendant SWSP is not a "person" within the meaning of the NJCRA, SWSP is entitled to summary judgment on Plaintiff's NJCRA claim. First, as previously mentioned, the NJCRA was designed to "incorporate and integrate seamlessly" with all existing civil rights jurisprudence, including § 1983. Stroby, 2010 WL 5036982, at *5 n.5. The text of the requirement that the entity subject to suit is a "person" is identical in both the NJCRA and § 1983. In Will, the Court held that neither a state nor a state official acting in his official capacity are "persons" within the meaning of § 1983. 491 U.S. at 71. Therefore, based upon the Supreme Court's holding in Will, neither § 1983 nor the NJCRA provide a remedy for alleged constitutional violations committed by the State of New Jersey. See Slinger, 2008 U.S. Dist. LEXIS 71723, at *19 (finding that "[s]ince the NJCRA is substantially modeled after 42 U.S.C. § 1983, and shares the requirement that the defendant sued be a 'person,' the NJCRA should also be deemed to incorporate Will."). Second, the term "person," as defined in New Jersey statutes, does not include the State. Id. The New Jersey law that defines words and phrases in used in any New Jersey statute, N.J. Stat. Ann. 1:1-2, defines "person" as:

> corporations, companies, associations, societies, firms, partnerships and joint stock companies as well as individuals, unless restricted by the context to an individual as distinguished from a corporate entity or specifically restricted to 1 or some of the above enumerated synonyms and, <u>when used to designate the owner of property which may be the subject of an offense, includes this State</u>, the United States, any other State of the United States as defined infra and any foreign country or government lawfully owning or possessing property within this State.

(emphasis added); Slinger, 2008 U.S. Dist. LEXIS 71723, at *19. Thus, under New Jersey law, the term "person" in all New Jersey statutes includes the State of New Jersey in the context of a

14

property dispute; not an alleged civil rights action.  Consequently, Plaintiff's NJCRA claims against SWSP are dismissed.[3]

Plaintiff's argument that Will does not bar his NJCRA claim against SWSP is unavailing. Plaintiff contends that because in Will the U.S. Supreme Court construed the term "person" in Section 1983 based on the principle that the Eleventh Amendment bars an individual from suing a state in federal court, and Defendant SWSP waived sovereign immunity by removing this case to federal court, Will does not bar Plaintiff's claim.  However, although the Supreme Court relied heavily upon existing Eleventh Amendment jurisprudence in construing the term "person" in Section 1983, subsequent jurisprudence demonstrates that whether a state waives sovereign immunity is irrelevant to whether Section 1983 provides a remedy for an alleged constitutional violation by a State or a state official acting in his official capacity.  See Arizonans for Official English v. Arizona, 520 U.S. 43, 69 (1997) (rejecting argument by the Ninth Amendment that "the State of Arizona expressly waived its right to assert the Eleventh Amendment as a defense to the award of nominal damages [for a § 1983 claim]," because "§ 1983 creates no remedy against a State.") (quoting Yniguez v. Arizonans for Official English, 69 F.3d 920, 948-49 (9th Cir. 1995)); Harper v. Colorado State Bd. of Land Comm'rs, 248 F. App'x 4, 5 (10th Cir. 2007) (rejecting argument that State exposed itself to suit under § 1983 by waiving sovereign immunity by emphasizing the "distinction between the immunity afforded by the Eleventh Amendment and the limitations in the scope of § 1983 arising from the terms of the statute."); Gean v. Hattaway, 330 F.3d 758, 766 (6th Cir. 2003) ("Even if Tennessee's sovereign immunity has been properly waived or abrogated for the purposes purposes of the federal statute the defendants allegedly violated, a § 1983 claim against the defendants in their official capacities cannot proceed

---

[3] The Court notes that SWSP is indeed an arm of the State of New Jersey.  The Complaint alleges that "Defendant [SWSP] is a governmental entity whose activities constitute state action within the meaning of 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution."  (Compl. ¶ 47).

15

because, by definition, those officials are not persons under the terms of § 1983."); Mason v. Univ. and Cmty. Coll. Sys. of Nev., No. 202-CV-0801, 2006 WL 2708050, at *2 (D. Nev. Sept. 19, 2006) ("Although a state may waive its Eleventh Amendment immunity by removing state law claims to federal court, a state is not a person for § 1983 purposes regardless of whether it removes such claims to federal court."). Accordingly, Plaintiff's argument that SWSP is a "person" within the meaning of § 1983 is meritless.

In sum, because the term "person" does not include the State of New Jersey, the Court will grant SWSP summary judgment on Plaintiff's NJCRA claim.

### D. Plaintiff's NJCRA Claim against Balicki

As previously mentioned, the State of New Jersey, and any state official working in his or her official capacity is not a "person" within the meaning of § 1983. Therefore, all claims against Balicki in her official capacity as superintendent of SWSP are dismissed. However, "[s]tate officials sued in their individual capacities are 'persons' for purposes of § 1983." Walker v. Beard, 244 F. App'x 439, 440 (3d Cir. 2007) (citing Hafer v. Melo, 502 U.S. 21, 26 (1991)). Consequently, the Court must decide whether Plaintiff can succeed on her § 1983 claim against Defendant Balicki. Without determining whether Defendant Balicki is entitled to summary judgment, however, the Court finds that Plaintiff fails to state a plausible claim of individual liability under the pleading standard set forth in Federal Rule of Civil Procedure 8(a).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief may be granted. With a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations

omitted). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making that determination, a court must conduct a two-part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11. First, the Court must separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. See id.

The starting point for the Court's analysis of whether Plaintiff states a plausible claim of individual liability against Defendant Balicki is the well-settled principle that "liability under § 1983 may not [be] based [solely] on the doctrine of respondeat superior." Walker, 244 F. App'x at 441 (citing Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993)). "[T]he plaintiff must allege that the defendant was personally involved in the deprivation." Id. A plaintiff may show personal involvement by demonstrating that "the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them." Id. (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Rode, 845 F.2d at 1207; see Solan v. Ranck, 326 F. App'x 97, 101 (3d Cir. 2009); Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.

17

2005). In particular, "a civil rights complaint is adequate whether it states the conduct, time, place, and persons responsible." Evancho, 423 F.3d at 353.

The Court finds that Plaintiff fails to state a plausible claim of individual liability against Plaintiff Baliciki under § 1983 and the NJCRA. With respect to Plaintiff's claim of individual liability against Defendant Balicki, the Complaint alleges:

> Defendant Karen Balicki, acting in her . . . individual capacity[] as Administrator of [SWSP], owed a duty to plaintiff to ensure that he would be safe from unprovoked attacks such as the one perpetrated by defendant Howard, in that she had a duty to ensure that inmates in the facility did not possess hot pots that had been altered to permit liquid to reaching [sic] boiling point . . . .
>
> Defendant Balicki breached that duty when she authorized her subordinate employees to permit Howard, an inmate with known psychological problems, to remain in the general prison population and further to possess and use a hot pot that was easily modifiable to become a dangerous instrumentality. . . .
>
> Defendant, with deliberate indifference to the consequences, established and maintained a policy, practice or custom of failing to sequester inmates classified as mental health special needs such as Howard. . . .
>
> Defendant's deliberate indifference to plaintiff's safety violated plaintiff's constitutional protection against cruel and unusual punishment under the Eighth Amendment.

(Compl. ¶¶ 20-23). Those allegations fail to demonstrate "the conduct, time, [and] place" of Defendant Balicki's alleged involvement in the events giving rise to this dispute. Evancho, 423 F.3d at 353. Specifically, the Complaint fails to allege facts indicating that Balicki personally transferred Howard to the general inmate population, or that Balicki had "contemporaneous, personal knowledge of [Howard's] transfer and acquiesced to it." Id. In fact, the Complaint does not contain the slightest suggestion that Balicki was aware of the date Howard was transferred to the general population, who authorized the transfer, the specific date or time

18

Balicki was notified of Howard's transfer, or the fact that Howard possessed a "hot pot" capable of inflicting injury upon a fellow cellmate.[4] In effect, the Complaint merely alleges that Balicki was responsible for SWSP, and by virtue of her position, she is liable under § 1983. Without more, those allegations are insufficient to state a plausible claim of individual liability under Section 1983. See id. (dismissing § 1983 claim against Attorney General when Complaint failed to allege that Attorney General (1) had contemporaneous, personal knowledge of, (2) personally directed; or (3) ordered the transfer of a former employee of state criminal bureau). Accordingly, Plaintiff's § 1983 and NJCRA claims against Balicki are dismissed without prejudice. See Gilmore v. Reilly, No. 09-5956, 2010 WL 1462876, at *6 (D.N.J. Apr. 09, 2010) (stating that "[i]n order to state . . . a claim against a supervisor for the actions of his or her subordinates under either § 1983 or the NJCRA, a plaintiff must allege that the supervisor was 'involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged.'" (quoting McKenna v. City of Phila., 528 F.3d 447, 460 (3d Cir. 2009)).

### E. John Does 1-10

Plaintiff argues that his Section 1983 should survive summary judgment because the Complaint identifies other unnamed supervisory employees of SWSP that were responsible for monitoring the use of pots in the prison populace and were responsible for ensuring that inmates with special mental health needs were removed from the general population.

"An action cannot be maintained against fictitious defendants." Durand ex rel. Durand v. Kolcraft, No. 05-4348, 2007 WL 4440165, *3 (D.N.J. Dec. 14, 2007) (citing Hindes v. F.D.I.C., 137 F.3d 148, 155-56 (3d Cir. 1998)); see Breslin v. City & County of Phila., 92 F.R.D. 764, 765

---

[4] Plaintiff offers testimony that he submitted three Inmate Remedy System Forms to prison officials. (Didiano Decl. ¶ 8). That evidence alone, however, does not prove that Defendant Balicki received the forms or reviewed the forms. Although the Court may reasonably infer that a prison official reviewed Plaintiff's Inmate Remedy Form, the Complaint does not allege that Defendant Balicki received the forms.

19

(E.D. Pa. 1981) (dismissing claims against unnamed parties after dismissing claims against three named defendants in Section 1983 action).

Because the Court dismissed all claims against Defendants Balicki and SWSP, the Court must also dismiss all claims against the remaining John Doe defendants.  Accordingly, Plaintiff's claims against John Does 1-10 are dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant SWSP summary judgment on Plaintiff's NJCRA and § 1983 claims.  The Court will also dismiss Plaintiff's NJCRA and § 1983 claims against Defendant Balicki without prejudice.  An accompanying Order shall issue today.


Dated:  4/18/11                                             /s/ Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge